UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN D. WILLIAMS,

              Plaintiff,                  Case No. 4:22-cv-11780
                                          District Judge Shalina D. Kumar
v.                                  Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 17),
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF
No. 19) and AFFIRM THE COMMISSIONER'S DECISION**

**I.     RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 17), **GRANT** Defendant's motion for summary judgment

(ECF No. 19), and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

      Plaintiff filed this action under 42 U.S.C. § 405(g) and 42 U.S.C. §

1383(c)(3) for review of a final decision of the Commissioner of Social Security

(Commissioner) denying his application(s) for Supplemental Security Income

(SSI) benefits.  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 17), the Commissioner's cross-motion for summary judgment (ECF No. 19), Plaintiff's reply (ECF No. 20), and the administrative record (ECF No. 13).

### A.    Background and Administrative History

In his April / June 2020 application for SSI, Plaintiff alleges his disability began on December 15, 2017, at the age of 51.  (ECF No. 13, PageID.264-273 [SSI Application], 274-279 [SSI Application Summary].)  In his disability report, he lists several medical conditions (hypertension, diabetes mellitus-type 2, osteoarthritis hands, chronic bronchitis (COPD), diabetic mellitus – neuropathy feet and hands, torn rotator cuff shoulders, repetitive stress disorder/overuse syndrome, carpal tunnel syndrome hands, a neck problem, and a back problem) as limiting his ability to work.  (*Id.*, PageID.312.)  His application was initially denied on February 3, 2021 (*id.*, PageID.128-149, 164-180), and denied on reconsideration on April 15, 2021 (*id.*, PageID.150-158, 184-189).

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (ECF No. 13, PageID.190-192.)  On September 22, 2021, ALJ Ramona Fernandez held a hearing at which Plaintiff and a vocational expert (VE), John Stokes, testified. (ECF No. 13, PageID.77-116.)  ALJ Fernandez issued her opinion on September 29, 2021, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (ECF No. 13, PageID.60-76.)

2

Plaintiff submitted a request for review of the hearing decision/order.  (ECF No. 13, PageID.260-263.)  However, on June 9, 2022, the Appeals Council denied Plaintiff's request for review.  (ECF No. 13, PageID.48-54.)  Thus, ALJ Fernandez's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on August 2, 2022.  (ECF No. 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 319 pages of medical records, which were available to the ALJ at the time of her September 29, 2021 decision.  (ECF No. 13, PageID.75-76, 371-689 [Exhibits 1F-18F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. § 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the May 28, 2020 application date.  (ECF No. 13, PageID.65.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:  cervical degenerative disc disease (DDD), left shoulder partial thickness rotator cuff tear, diabetes mellitus, chronic obstructive pulmonary disease (COPD), and obesity. (*Id*., PageID.65-66.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the

3

severity of one of the listed impairments.  (*Id.*, PageID.66-67.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[1] and determined that Plaintiff had the RFC:

> . . . to perform light work as defined in 20 CFR 416.967(b) [*i.e., exertional limitations*] with additional limitations.  He can frequently climb, stoop, kneel, crouch, and balance; and occasionally crawl and use ladders, ropes, or scaffolds [*i.e., postural limitations*].  He can occasionally reach overhead with the left non-dominant upper extremity [*i.e., manipulative limitation*].  He must avoid concentrated exposure to fumes, dust, humidity, and pulmonary irritants.  He must also avoid exposure to extreme temperatures; dangerous, moving machinery; and work at unprotected heights, but is capable of avoiding ordinary workplace hazards [*i.e., environmental limitations*].

(*Id.*, PageID.67-70.)  At **Step 4**, the ALJ determined that Plaintiff was capable of performing past relevant work as a hair stylist, as it did not require the performance of work-related activities precluded by Plaintiff's RFC.  (*Id.*, PageID.70-71.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since May 28, 2020, the date the application was filed.  (*Id.*, PageID.71.)

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273

(6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence

standard, "'a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the

merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651

(quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

###    E.    Analysis

This appeal concerns the ALJ Fernandez's treatment of the opinion

evidence, which she claimed to have "considered . . . in accordance with the

requirements of 20 CFR 416.920c."  (ECF No. 13, PageID.67.)  While Plaintiff

argues the ALJ "erred by finding the opinions of the Plaintiff's treating source, Dr.

[Thomas][,] unpersuasive, and did not properly articulate the level of

'supportability' and 'consistency' with the record as directed by 20 C.F.R. §

[416.920]c[,]" (ECF No. 17, PageID.700, 710-717), the Commissioner argues that

the ALJ reasonably discounted Dr. Thomas's opinions (ECF No. 19, PageID.723,

726-739).[2]

> **1.     The ALJ was minimally persuaded by the primary care provider's (Tendai Kimberly Thomas, M.D.'s) August 2021 opinions.**

Pharmacy records indicate that Dr. Thomas wrote Plaintiff a prescription as

early as July 2016.  (ECF No. 13, PageID.514.)  Plaintiff treated with Dr. Thomas,

IHA Dominos Farms (Exhibits 2F, 6F, 8F, 14F, 15F, 16F, 18F), and/or St. Joseph

Mercy (Exhibits 1F, 3F, 12F, 13F, 17F) from approximately February 2019 to

August 2021.  In addition to treatment notes, the administrative record contains

evidence of two opinions from Dr. Thomas, one dated August 15, 2021 (ECF No.

13, PageID.588-591) and another dated August 30, 2021 (*id.*, PageID.625-628).

Preliminarily, the Court notes that the latter states she first started treating Plaintiff

in 2010 (*id.*, PageID.625), while the former states she first started treating Plaintiff

on April 13, 2011 (*id.*, PageID.588).  As for these opinions, the ALJ observed:

> Interestingly, they were offered the same month, in August 2021, but are slightly different.  Both suggested that the claimant could lift or carry about ten pounds occasionally and sit, stand, or walk for about two hour each in an 8-hour day.  However, one noted that he required a one hour break every hour, while the other stated that was not necessary.  One statement also noted that he could occasionally

---

[2] Plaintiff twice mistakenly refers to the treating source as "Dr. Robbins," once in the Table of Contents and once in the sole argument's heading, the latter of which appears a few lines after the issue presented, which correctly lists Dr. Thomas's name.  (*See* ECF No. 17, PageID.700, 710.)

> perform foot control operations, but another said he could continually perform these.  Another difference was one statement found he could occasionally handle, finger, and feel bilaterally, while the other said no more than frequently (Exhibit 14F; 16F).

(ECF No. 13, PageID.69.)  In other words, the ALJ noted differences and inconsistencies in Dr. Thomas's assessments of Plaintiff's exertional and manipulative limitations.  The ALJ then provided two reasons for finding these opinions "minimally persuasive[,]" (*Id*., PageID.69), each of which Plaintiff challenges in this appeal.

### a.    Consistency

First, the ALJ stated, "[t]hese inconsistencies between the two statement[s] are one reason that they are found to be minimally persuasive."  (ECF No. 13, PageID.69.)  Plaintiff challenges the ALJ's articulation of the consistency factor, which provides:  "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2). Specifically, Plaintiff argues:

> These statement[s] are from the *same source*, Dr. Thomas, so the consistency as to the restrictions should be based on these other sources.  At worst for the Plaintiff, the least favorable limitations should have moved to evaluating the consistency and supportability of the limitations in relation to the *other medical sources*.

(ECF No. 17, PageID.712-713 (emphases added).)

Yet, even if the ALJ was comparing two opinions from the *same source*, as opposed to two opinions from *other medical sources*, the ALJ discounted the persuasiveness of Dr. Thomas's opinions as inconsistent with each other, because they included "differing limitations despite having been signed by the doctor during the same month . . . ."  (ECF No. 19, PageID.727.)  These differing, near-simultaneous opinions are akin to "internally inconsistent" findings.  *See*, *e.g.*, *Buckman v. Kijakazi*, No. 4:20-CV-00085-HBB, 2022 WL 615027, at *12 (W.D. Ky. Mar. 2, 2022) ("the ALJ found Dr. Oliver's opinion to be 'unpersuasive' as the result of 'internally inconsistent' findings and that the opinion was 'not well supported by Dr. Oliver's own examinations with [Plaintiff] or the overall level of treatment he has provided.'").  At the very least, this would appear to be among "other factors that tend to support or contradict a medical opinion . . . ."  20 C.F.R. § 416.920c(c)(5).  Both opinions having been properly called into question, the ALJ was not required – as Plaintiff suggests – to evaluate the consistency and supportability of Dr. Thomas's "least favorable" limitations "in relation to the other medical sources."  (ECF No. 17, PageID.712-713.)  Plaintiff cites no authority to the contrary.

### b.    Supportability (reaching, left shoulder)

Second, the ALJ stated, "the medical records of Dr. Thomas do not support the limitations given."  (ECF No. 13, PageID.69.)  By way of background, the ALJ

9

had already discussed "[t]he longitudinal medical record" for its suggestion that "the claimant's most limiting condition is a partial thickness tear in his left shoulder[,]" providing citations to multiple records (even if not with attribution to the author or date), including:

- Dr. Thomas's June 24, 2020 progress notes, which reflected pain in the left shoulder starting "more than 1 month ago[,]" (ECF No. 13, PageID.390);

- An August 30, 2020 left shoulder MRI, which revealed "[p]artial thickness bursal sided tear . . . [,]" "[s]ubacromial subdeltoid bursitis[,]" and "[m]ild hypertrophic degenerative changes . . . [,]" (*id.*, PageID.443, 455, 466);

- A recommendation for physical therapy, for which the ALJ cited a September 2, 2020 physical therapy discharge summary (*id.*, PageID.524-525), but for which the ALJ may have intended to cite the apparent September 11, 2020 referral to physical therapy (*id.*, PageID.454);

- Justin Rodnez, FNP-C's December 14, 2020 consultative examination (CE) records (*id.*, PageID.479-494) to support the ALJ's statement that "[p]hysical examinations show that he has decreased abduction and pain in the left upper extremity[,]" and tenderness at the cervical spine (*see id.*, PageID.481, 492, 493);

- Morgan Grzegorzewski, P.A.'s August 26, 2021 progress notes, at which time the physical exam indicated "no tenderness" in the cervical back (*id.*, PageID.682), but which the ALJ uses as partial support for the statement that "physical examinations have shown some tenderness and swelling in the cervical spine . . . [,]" *i.e., an error in Plaintiff's favor*.

(*Id.*, PageID.68.)  Then, when discussing Dr. Thomas's opinions, the ALJ explained:

10

> Treatment notes routinely discuss the claimant's left shoulder pain and diabetes mellitus but make no mention of lower extremity difficulties to warrant the foot pedal limitation given in one of her statements. Similarly, there is no mention of hand deficits to support the manipulative limitations given.  Overall, the significant restrictions provided by Dr. Thomas as [sic] not consistent with the medical records.

(ECF No. 13, PageID.69.)

Plaintiff challenges the ALJ's articulation of the supportability factor, which provides:  "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(1).  (ECF No. 17, PageID.713-714.)  Suggesting that the ALJ did not set forth the "minimum level of articulation," *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021) (Lawson, J.), Plaintiff contends "[t]he discounting of the manipulative limitations needs to be *reconciled* with the medical opinions from Dr. Thomas and other physicians whose diagnosis could reasonably be seen to support those conclusions."  (ECF No. 17, PageID.711-712, 713 (emphasis added).)  He asserts that, "[e]ven taking the least favorable view" of Dr. Thomas's two treating source statements as to manipulative limitations – *e.g.*, occasionally (instead of never) reaching bilaterally in all directions other than overhead (*compare* ECF No. 13, PageID.590, 627) – Plaintiff "would have [been]

11

limited . . . to occasional reaching in all directions other than just overhead." (ECF No. 17, PageID.713.) This would have precluded Plaintiff's past relevant work as a hair stylist, which involves reaching "frequently," *i.e.*, "from 1/3 to 2/3 of the time." *See* DICOT 332.271-018.[3] However, Plaintiff's assertion that "the evidence of record is not only consistent with a limitation to overhead reaching, but also reaching in all directions, *as noted by Dr. Thomas*[,]" (ECF No. 17, PageID.714 (emphasis added); *see also* ECF No. 20, PageID.742), is unavailing where Plaintiff has not shown error in the ALJ's treatment of Dr. Thomas's opinions.

Plaintiff further asserts "[t]he ALJ does not specifically address why she chose to find the restrictions in reaching in all directions to be unpersuasive[,]" (ECF No. 17, PageID.714), yet, "'an ALJ need not explain her evaluation of each portion of a medical source's opinion.'" *Hague v. Comm'r of Soc. Sec.*, No. 20-13084, 2022 WL 965027, at *6 (E.D. Mich. Mar. 30, 2022) (Levy, J.) (quoting

---

[3] The Court acknowledges that DICOT 332.271-018 involves reaching "frequently" and that the ALJ's RFC determination included a limitation to "occasionally reach[ing] overhead with the left non-dominant upper extremity[,]" (ECF No. 13, PageID.67). Nonetheless, at Step 4, based on the VE's testimony – namely, a hypothetical individual with Plaintiff's RFC "could perform the claimant's past relevant work, but only as the job is performed per the <u>DOT</u>, not as performed, according to testimony[,]" (ECF No. 13, PageID.110-111) – the ALJ found that Plaintiff was "able to perform it as generally performed." (ECF No. 13, PageID.67, 70.) Plaintiff does not challenge the ALJ's Step 4 determination in the present appeal.

12

*Hague v. Comm'r of Soc. Sec.*, No. 20-13084, 2022 WL 1055457, at *7 (E.D.

Mich. Feb. 1, 2022) (Ivy, M.J.) (citing 20 C.F.R. §§ 404.1520c(b)(1),

416.920c(b)(1))).

Finally, in advocating for a more restrictive limitation on reaching, Plaintiff

points to:

- the ALJ's acknowledgment of medical records routinely discussing shoulder pain (ECF No. 13, PageID.69);

- Justin Rodnez, FNP-C's December 14, 2020 range of motion report noting 100 degrees abduction in the left shoulder (ECF No. 13, PageID.481);

- Rodnez's same-day musculoskeletal examination as to the left upper extremity, seemingly for revealing decreased abduction and pain with abduction (*id.*, PageID.492); and,

- a September 2, 2020 physical therapy discharge summary noting "numbness / tingling in the (L) UE[,]" and, seemingly, for left shoulder abduction AROM (active range of motion) and PROM (passive range of motion) measurements (ECF No. 13, PageID.524).

(ECF No. 17, PageID.714; ECF No. 20, PageID.741-742.)  Contending that he

"only has 2/3rds of his range of motion to his sides, not just above his head[,]"

Plaintiff asserts "[t]hese objective findings are consistent with and supportive of

Dr. Thomas' opinion that the Plaintiff is limited to at most occasional reaching in

all directions, not just overhead."  (ECF No. 17, PageID.714.)  However, this

argument is akin to reweighing the evidence.  *Reynolds v. Comm'r of Soc. Sec.*, 424

13

F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").  As discussed through this report, the ALJ's decision is supported by substantial evidence, in which case "this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley*, 581 F.3d at 406 (quoting *Key,* 109 F.3d at 273).

### c.    Other limitations & summation

In addition to challenging the ALJ's two reasons for finding Dr. Thomas's statements only minimally persuasive, Plaintiff contends the ALJ "also fails to address why the *other limitations* in the medical opinion of Dr. Thomas are unpersuasive[,]" *e.g.*, her opinion that Plaintiff would, on average, be absent from work 4 or more days per month (ECF No. 13, PageID.588, 625), explaining as follows:

> Many of the limitations provided in both opinions, if accepted as persuasive, would have precluded the Plaintiff from performing his past relevant work.  For example, the Vocational Expert testified that the Plaintiff would have been precluded from work if he missed more than 1 day per month, which each opinion renders.

(ECF No. 17, PageID.715 (emphasis added).)  Indeed, the VE testified that an individual who required two absences per month would be "precluded from the claimant's past relevant work [and] other work."  (ECF No. 13, PageID.112-113.)

Nonetheless, to the extent Plaintiff argues the ALJ erred by not explaining her rejection of Dr. Thomas's other limitations (*see* ECF No. 17, PageID.713-715), the Commissioner convincingly contends that the ALJ "is not required to provide a separate explanation as to each limitation listed in an opinion the ALJ reasonably concludes is unpersuasive," and the ALJ "may disregard a vocational expert's response to hypothetical questions incorporating a more restrictive RFC than the ALJ ultimately finds to be supported by the record." (ECF No. 19, PageID.730-731.) *See Hague*, 2022 WL 965027, at *6; *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020) ("By posing the question, the administrative law judge did not make a finding or bind himself to a finding that plaintiff was off-task at least 10% of the workday.").

> **2.   The ALJ was persuaded by the state agency medical consultants' (Thomas Chiambretti, D.O.'s & Alyce Metoyer, D.O.'s) opinions.**

The record contains the January 6, 2021 physical RFC assessment of Dr. Chiambretti (ECF No. 13, PageID.139-144) and the April 6, 2021 physical RFC assessment of Dr. Metoyer (*id.*, PageID.154-156). As to these two opinions, the ALJ observed:

> State Agency doctors reviewed the claimant's medical record on a couple [of] occasions.  In January 2021, Thomas Chiambretti, D.O. determined that his physical conditions limited him to light exertional work, with additional postural, reaching, and environmental limitations (Exhibit 1A).  Alyce Metoyer, D.O., another State Agency

> doctor, offered a similar opinion in April 2021, but added humidity as
> one of the environmental factors that he should avoid (Exhibit 4A).

(ECF No. 13, PageID.70.)  Having already cited several physical examinations,

although without designation of author or date – *e.g.*, Rodnez's December 14, 2020

CE (*id.*, PageID.479-494), Grzegorzewski's August 26, 2021 progress notes (*id.*,

PageID.679-682), and Dr. Thomas's July 21, 2021 office visit notes (ECF No. 13,

PageID.610) (*see* ECF No. 13, PageID.68-69) – the ALJ provided the following

explanation for finding the state agency doctors' opinions persuasive:

> While neither had an opportunity to meet with or examine the
> claimant, they each reviewed most of the medical record.  Although
> some evidence was submitted after their review, this consisted mostly
> of duplicate information and the medical source statements noted
> above [*i.e.*, those of Dr. Thomas].  The opinion of the State Agency
> doctors is supported by the record as a whole.  The claimant has been
> diagnosed with a few medical conditions but has received only
> conservative care.  Moreover, physical examinations have not
> revealed more significant deficits than those given.

(*Id.*, PageID.70.)

The Commissioner correctly notes that "Plaintiff does not challenge the

ALJ's evaluation of Dr. Chiambretti's and Dr. Metoyer's prior administrative

medical findings[.]"  (ECF No. 19, PageID.735.)  Although Plaintiff mentions

these opinions in his reply, he does so as follows:

> The ALJ chose to find the opinions of the State Agency Medical
> Consultants to be more consistent with the record than the reaching
> limitations of Dr. Thomas.  However, as demonstrated above, the
> evidence is equally, if not more supportive of a restriction to less than
> constant reaching in all directions.  No discussion, or logical bridge,

16

was built beyond stating that their opinions were supported by the record as a whole.

(ECF No. 20, PageID.743.)  These statements are unavailing.  For one thing, Plaintiff should have raised any challenge to the ALJ's articulation of the state agency opinions in his opening brief, not in his reply.  *See*, *e.g.*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).  For another, "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  And it does.  *See Buxton v. Halter*, 246 F.3d 762, 772-773 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion….  This is so because there is a 'zone of choice' within which the Commissioner can act without the fear of court interference.") (citation omitted).  Moreover, "it is well settled that the opinions of State agency medical consultants … may be entitled to significant weight because they are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Stango v. Comm'r of Soc. Sec*., No. 2:17-CV-10539, 2018 WL 1221494, at *4 (E.D. Mich. Feb. 15, 2018), *report and recommendation adopted*, No. 17-CV-10539-DT, 2018 WL 1203501 (E.D. Mich. Mar. 8, 2018) (internal citations omitted).  *See also*

17

*Elizabeth B. v. Kijakazi*, No. 21-CV-02368-JSC, 2022 WL 4543686, at *4 (N.D. Cal. Sept. 28, 2022) (an "ALJ is entitled to rely upon the state agency consultants' superior understanding of the rules and regulations governing Social Security disability adjudications under the revised regulations[.]").

### 3. Plaintiff takes issue with the ALJ's treatment of pulmonary function and related exertional limitations.

Plaintiff also takes issue with the ALJ's treatment of pulmonary function and related exertional limitations (standing/walking/lifting/carrying). (ECF No. 17, PageID.715-716.) On December 14, 2020, Plaintiff underwent a consultative examination (CE) with Justin Rodnez, FNP-C (ECF No. 13, PageID.479-494), which included a pulmonary function report administered by Rodnez (*id*., PageID.483) and six SA-3 Spirometry Reports (ECF No. 13, PageID.484-489). Plaintiff describes these as "6 trials, 3 pre-bronchodilator and 3 post-bronchodilator." (ECF No. 17, PageID.715.)

Plaintiff's pulmonary function and related exertional limitation arguments touch upon the ALJ's: (a) Step 3 conclusion that Plaintiff's impairment or combination of impairments did not meet or medically equal Listing 3.02 ("Chronic Respiratory Disorders") or Listing 3.03 ("Asthma"); and, (b) RFC discussion concerning Plaintiff's respiratory condition. (*See* ECF No. 13, PageID.66-68.)

18

### a.    Listing 3.00 (Respiratory Disorders - Adult)

Plaintiff mentions the ALJ's treatment of Listing 3.02, contending that "the findings of the Plaintiff's pulmonary function testing are more significant than the ALJ discusses[,]" and that the ALJ "oversimplifi[ed] . . . the evidence." (ECF No. 17, PageID.715.)  At Step 3, the ALJ stated:

> However, Pulmonary Function Testing in the record does not show that his FEV1 is less than or equal to 1.75 or 2.30; FVC is less than or equal to 2.20; or DLCO is less than or equal to 11.5 ([ECF No. 13, PageID.483-489]).  Testing also fails to show arterial PaO2, arterial PaCO2, or SpO2 less than or equal to the levels noted.  Finally, there is no evidence to show he has been hospitalized three times for his respiratory condition within a twelve-month period.

(ECF No. 13, PageID.66-67.)  According to Plaintiff, he . . .

> . . . underwent 6 trials, 3 pre-bronchodilator and 3 post-bronchodilator.  ECF No. 13, PageID.483.  All 3 of the Plaintiff's pre-bronchodilator trials revealed FEV1s that were significantly below listing level (1.15, 1.45, and 1.60).  *Id.*  The Plaintiff then tested again after the bronchodilator and the only real finding that substantially deviated outside listing level was the first trial afterwards, at 2.09.  *Id.*  After that, he rendered a 1.79, which is essentially listing level.  *Id.*  Finally, his last trial is 1.65, again within listing level.  *Id.*

(ECF No. 17, PageID.715.)  Plaintiff does not dispute that "it is Agency practice to take the highest test finding," but he contends "further discussion as to how the majority of his testing being listing level could support that the Plaintiff equaled the listing, or at least how the severity of the findings could reasonably support Dr. Thomas' standing/walking limitations, should have been discussed."  (ECF No. 17, PageID.715-716.)

19

However, as the Commissioner accurately notes, Plaintiff "has not actually asserted that the ALJ erred at step three . . . [,]" and "he has made no showing that his impairments met or medically equaled all of the specified criteria of that listing." (ECF No. 19, PageID.736-737 n.1.)  *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("we limit our consideration to the particular points that Hollon appears to raise in her brief on appeal."); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.").  Furthermore, the Undersigned's Practice Guidelines for Social Security cases make clear that, "Any issue addressed in the brief that is not both 1) included in Issues Presented and 2) labeled as a section heading within the brief, <u>will not be considered by the Court</u>." (Emphasis in original.)

### b.    RFC (pulmonary function - exertional)

Moving to the RFC discussion, the ALJ addressed Plaintiff's respiratory condition as follows:

> . . . the claimant has had little treatment for chronic obstructive pulmonary disease (COPD).  This was noted as a diagnosis in December 2020, after he was found to have a moderately severe to severe restriction with pulmonary function testing and exhibited dyspnea on moderate exertion.  However, it was also noted at that time that he had clear lungs with normal breath sounds ([ECF No. 13, PageID.483-489]).  There is no other mention of breathing difficulties in the record.  Nor is there evidence to show that he has required specialized care for this condition.  He testified that he does not need to use a daily inhaler but has a nebulizer that he uses as needed.  At

20

> one point, he was using it about three times per week.  Given his
> infrequent need for medication, the undersigned finds that including
> the above environmental limitations above is reasonable to account
> for this condition.

(ECF No. 13, PageID.68.)  Plaintiff argues that the ALJ should have further

discussed "how the severity of the findings could reasonably support Dr. Thomas'

standing/walking limitations," *i.e.*, Plaintiff contends the ALJ's observation of

"moderately severe to severe" findings and "dyspnea" should also have prompted

consideration of the exertional limitations of standing/walking and lifting/carrying,

*consistent with Dr. Thomas's opinion*.  (ECF No. 17, PageID.715-716.)

However, Plaintiff's argument that "a logical bridge was not made between

how the treating source's opinion was inconsistent with the record in terms of these

exertional limitations[,]" (*id*., PageID.716), misses the mark.  In Plaintiff's case,

there is a logical bridge between:  (i) the RFC's exertional limitation of "light

work," (ECF No. 13, PageID.67); (ii) the ALJ's finding that the state agency

doctors' opinions were persuasive (*id*., PageID.70); (iii) the exertional limitations

in Chiambretti's January 6, 2021 physical RFC assessment – *i.e.*, occasionally

lifting and/or carrying 20 pounds and frequently lifting and/or carrying 10 pounds

(*id*., PageID.140); and, (iv) Metoyer's April 6, 2021 assessment that Plaintiff's

"RFC is light but with Left OVH reaching to occasional[,]" (*id*., PageID.153).  *See

also* 20 C.F.R. § 416.967(b).  As noted above, Plaintiff's opening brief does not

challenge the ALJ's treatment of the state agency opinions.  (*See* Section II.E.2.)

Also, with respect to Plaintiff's respiratory condition, the Commissioner appropriately contends that Plaintiff "merely requests that the Court re-weigh the evidence already considered by the ALJ," and Plaintiff "does not render the ALJ's decision to discount Dr. Thomas's opinions unsupported by substantial evidence." (ECF No. 19, PageID.738.)  *See*, *e.g.*, *Coston v. Comm'r of Soc. Sec.*, No. 20-12060, 2022 WL 989471, at *6 (E.D. Mich. Mar. 31, 2022) ("Plaintiff's pointing to evidence in support of a finding that Dr. Cox's opinion is supportable is essentially a request to reevaluate evidence, and the Court's 'task is not to reweigh the evidence.  That is solely the province of the Secretary.'") (*quoting Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) (internal citation omitted)).

And, to the extent Plaintiff challenges the ALJ's statement that in December 2020 "[Plaintiff] was found to have a moderately severe to severe restriction with pulmonary function testing and exhibited dyspnea on moderate exertion[,]" as support for the RFC's environmental restrictions (*see* ECF No. 13, PageID.68), Plaintiff replies "the ALJ is not a medical professional and for her to decide that such pulmonary limitations are acceptable is her substituting her lay opinion in place of one that should be reserved for medical sources."  (ECF No. 20, PageID.743.)  However, Plaintiff's assertion that the ALJ did not sufficiently articulate the pulmonary function testing under 20 C.F.R. 416.920c(c) ("Factors."),

but "merely interpret[ed] the data to support environmental restrictions and nothing more[,]" (*id*., PageID.744), is inaccurate. The ALJ's treatment of the pulmonary function testing included recognizing, *inter alia*: (1) Rodnez's December 2020 COPD diagnosis (ECF No. 13, PageID.493); (2) interpretive data – *e.g.*, moderately severe restriction (*id*., PageID.484, 489) – from the various SA-3 Spirometry Reports (*id*., PageID.484-489); and, (3) the portion of Rodnez's Medical Source Statement (MSS) that "dyspnea is noted on moderate exertion[;] however, lungs are clear, normal breath sounds," (*id*., PageID.493). (*Id*., PageID.68.) Thus, the ALJ has not *interpreted* raw data. *See*, *e.g.*, *Tipton v. Comm'r of Soc. Sec.*, 847 F. App'x 290, 294 (6th Cir. 2021) ("Plaintiff argues that the ALJ impermissibly substituted her lay judgment for the opinions of medical experts; but in truth, the ALJ turned to a variety of medical sources located in the record in coming to her conclusions."); *Wood v. Comm'r of Soc. Sec.*, No. 19-1560, 2020 WL 618536, at *5 (6th Cir. Jan. 31, 2020) ("Wood's claim that the ALJ substituted her lay opinion for a medical opinion . . . is simply misplaced[,]" as "[t]he ALJ relied on medical examination reports regarding Wood's conditions; the ALJ did not reach these determinations on her own.").

        **4.**     **Medical Vocational Guidelines 202.00 ("Maximum sustained work capability limited to light work as a result of severe medically determinable impairment(s).")**

Finally, Plaintiff contends the ALJ's "error has had a material effect on the outcome . . . ."  (ECF No. 17, PageID.716.)  He asserts that, if the ALJ had not found him capable of performing past relevant work at Step 4, the ALJ would have continued to Step 5 and, even if he was capable of performing other work, "based on his age, education, previous work, and present limitation to no more than unskilled work," he would have been "determined disabled pursuant to Medical Vocational Guidelines § 202.06 on January 8, 2021[,]" *i.e.*, the date before his 55th birthday, when he "escalated to advanced age . . . ."  (ECF No. 17, PageID.716-717; *see also* ECF No. 13, PageID.150, 356.)  *See also* Medical Vocational Guidelines § 202.00(c).

Put another way, Plaintiff seems to argue that, *had the ALJ found Plaintiff incapable of performing his past relevant work and proceeded to Step 5*, Plaintiff's education – a "high school graduate or more" without provision "for direct entry into skilled work," *i.e.*, in Plaintiff's case one year of college (ECF No. 13, PageID.82) – along with his previous work experience of "skilled or semiskilled" without "transferable" skills – *i.e.*, Plaintiff's past work as a hair stylist (D.O.T. 332.271-018), which was considered "light and skilled," although "performed at the light to medium exertional level," (*id*., PageID.70) – would have resulted in a determination that he was disabled.  Here, where Plaintiff has failed to show error in the ALJ's RFC determination or, for that matter, the ALJ's Step 4

24

determination, Plaintiff's apparent argument that, if the ALJ had continued to Step 5, Plaintiff would have been disabled as of January 8, 2021 through the date of the decision (*i.e.*, September 29, 2021), fails.

## F. Conclusion

In the end, to the extent Plaintiff mentions "reasonable" support for Dr. Thomas's (or other physicians') manipulative, standing/walking, and/or lifting/carrying limitations (ECF No. 17, pageID.713, 716), the Commissioner properly notes, "Plaintiff's insistence that the record could have instead supported the opposite conclusion does not establish reversible error on the ALJ's part." (ECF No. 19, PageID.739.)  *See, e.g., Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *4 (6th Cir. Nov. 22, 2022) ("That the evidence overall, including [the occupational therapist]'s opinion, could support two inconsistent conclusions regarding [Plaintiff's] RFC – the capacity to perform sedentary work versus light work – does not change that the Commissioner's pick of the two is supported by substantial evidence.").

Plaintiff has the burden of proof on statements of error.  Plaintiff has not shown legal error that would upend the ALJ's decision, and the ALJ's decision is supported by substantial evidence.  For the foregoing reasons, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 17), **GRANT** Defendant's motion for summary judgment (ECF No. 19), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections,

26

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 11, 2023

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE